# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
MAR 3 0 2015
JULIA A. DUDLEY, CLERK
BY: /s/ A. Blaylock
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>651 Quarry Street<br>Apt. A4<br>Bristol, VA | ) ) ) ) ) ) Case No. 1:15mj44 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___Western___ District of ___Virginia___ *(identify the person or describe property to be searched and give its location):* 651 Quarry Street, Apt. A4, Bristol, VA (to include the apartment, persons present, and vehicles in the vicinity of the apartment provided the keys to or operators of said vehicles are located in the apartment). Attachment A consists of a photograph of the apartment.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___21___ U.S.C. § ___846/841(a)(1)___ , and the application is based on these facts: See Attachment C and/or 841(a)(1)

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Brian Snedeker*
*Applicant's signature*

Brian Snedeker, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/30/15

*/s/ Pamela Meade Sargent*
*Judge's signature*

City and state: Abingdon, Virginia        Pamela Meade Sargent, USMJ
*Printed name and title*

# ATTACHMENT A



651 Quarry St, Apt. A4, Bristol, VA

## ATTACHMENT B

1. Methamphetamine laboratory precursors, chemicals, and equipment (and original packaging of same) including the following: pseudoephedrine, ammonium nitrate (e.g. instant cold packs), lithium (e.g. batteries containing lithium), sodium hydroxide (e.g. Red Devil Lye), petroleum ether/petroleum naphtha/white gas (e.g. Coleman Fuel, lighter fluid), muriatic acid, sulfuric acid, table salt, aluminum foil, plastic soda bottles (empty or no longer containing original contents), glass mason jars, plastic food storage containers, Ziplock-type plastic bags, plastic tubing, electrical tape and/or duct tape, coffee filters, pipe cutters (used to cut open lithium batteries), electric hot plates/electric skillets, frying pans, razor blades, digital scales, funnels, and stirring utensils.

2. Unidentified powders (processed/semi-processed precursors, chemicals).

3. Glass jars and plastic bottles/storage containers filled with unidentified liquids or sludges (processed/semi-processed precursors and other unidentified mixtures related to the manufacturing of methamphetamine)

4. Devices used to communicate with methamphetamine manufacturing co-conspirators including cellular telephones, pagers, and two-way radios; electronic equipment used for counter-surveillance to include scanners, anti-bugging devices, and video surveillance cameras..

5. Firearms, including but not limited to handguns, rifles, and shotguns that are commonly used by individuals to protect clandestine methamphetamine manufacturing related operations and controlled substances.

6. Books, receipts, ledgers, notes, and videos pertaining to the illicit manufacturing of methamphetamine and the purchasing, transporting, and preparation of methamphetamine precursors, chemicals, and equipment.

7. Messages/letters, telephone numbers/call records/contact information, names, and addresses relating to the illicit manufacturing of methamphetamine and the purchasing, transporting, and preparation of methamphetamine precursors, chemicals, and equipment. These messages/letters, telephone numbers/call records/contact information, names, and addresses may be written on personal calendars, personal address/telephone books, Rolodex type indices, notebooks, loose pieces of paper, and found in mail.

8. Photographs and videos depicting persons involved with/engaged in the manufacturing/use of methamphetamine and/or the purchasing, preparing, and storing of methamphetamine laboratory precursors, chemicals, and equipment.

ATTACHMENT B (Continued)

9. Items or articles of personal property tending to show ownership, dominion, or control of the premises/property/vehicles. Such items or articles include (but are not limited to) personal identification, personal correspondence, diaries, checkbooks, notes, photographs (including digital), keys, receipts, personal telephone and address books, videos, and motor vehicle related documents (titles/registrations).

10. Many of the items listed in Paragraphs 6 through 9 are commonly stored in/on digital media. Therefore, digital media (including but not limited to computers/computer hard drives, floppy disks, CD's, flash/jump drives, personal digital assistants (PDA's), cellular/smart telephones, digital cameras, iPODs, iPADs, etc.) are to be seized and examined specifically for the items listed in Paragraphs 6 through 9.

ATTACHMENT C

AFFIDAVIT of
Special Agent Brian Snedeker
Drug Enforcement Administration
Bristol, Virginia

1. I, Special Agent Brian Snedeker, being duly sworn hereby depose and say:

2. The purpose of this application and affidavit is to secure a search warrant for the premises known as 651 Quarry Street, Apt. A4, Bristol, VA. This affiant, after obtaining and reviewing information, believes there is evidence of conspiracy to manufacture methamphetamine and/or manufacturing methamphetamine at 651 Quarry Street, Apt. A4, Bristol, VA in violation of 21 USC 846/841(a)(1) and 841(a)(1).

3. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed for approximately (23) years. During my employment I have received comprehensive classroom training from the Drug Enforcement Administration in specialized narcotic investigative matters including but not limited to drug interdiction, drug detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and organizations involving the smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances and controlled substance precursors. I am a graduate of both the DEA's Clandestine Laboratory Investigation/Safety Certification Program and the DEA's Clandestine Laboratory Site Safety Officer School. I have participated in the execution of more than (300) narcotics related search warrants and the seizure and dismantling of more than (200) clandestine methamphetamine laboratories. I have testified as an expert on multiple occasions in Federal Court and State Court regarding the clandestine manufacturing of methamphetamine.

4. The facts set forth in this affidavit are known to me as a result of my personal participation and information provided to this affiant by another law enforcement officer and a retail store loss prevention employee/investigator.

5. The manufacturing of methamphetamine (a Schedule II Controlled Substance) by way of the ammonium nitrate/lithium metal method (also known as the "shake and bake" or "one pot" method) requires pseudoephedrine/ephedrine (obtained through the processing of cold/allergy pills, tablets, gelcaps, and liquids containing pseudoephedrine or ephedrine), ammonium nitrate (found in instant cold packs), and lithium metal (found in lithium batteries). Other chemicals/ingredients commonly used during the ammonium nitrate/lithium metal method include sodium hydroxide (e.g. Red Devil Lye), petroleum ether/petroleum naphtha/white gas (e.g. Coleman Fuel, lighter fluid), acetone, muriatic acid, sulfuric acid, table salt, and aluminum foil. Equipment/tools commonly used during the manufacturing of methamphetamine include soda bottles, glass mason jars, plastic food storage containers, plastic tubing, electrical tape and/or duct tape, coffee filters, pipe cutters

(often used to open lithium batteries), Ziplock-type plastic bags, frying pans/electric skillets/propane burners (to dry the methamphetamine), razor blades, digital scales, funnels, and stirring utensils.

6. Individuals who manufacture methamphetamine usually use and sell/trade the methamphetamine they manufacture. These manufacturers routinely have other persons (hereafter referred to as "shoppers") assist them in the purchasing of precursors, chemicals, and equipment/supplies needed to manufacture methamphetamine. Manufacturers will regularly pay shoppers in methamphetamine (to use and sell) and/or cash for their assistance.

7. On March 12, 2015, law enforcement encountered an individual (hereafter referred to as "Person A" – any reference to the gender of Person A does not necessarily reflect the true gender of the subject) in Bristol, VA who was in possession of (20) pseudoephedrine tablets. Person A advised law enforcement that she was on the way to the A Building of Rice Terrace (651 Quarry Street, Bristol, VA) to give the pseudoephedrine tablets to Vernon Trivett so that Trivett could manufacture methamphetamine via the shake and bake (ammonium nitrate/lithium metal) method. Person A further advised that she expected to receive approximately (1) gram of methamphetamine from Trivett after the methamphetamine manufacturing was complete. Person A claimed that Trivett's methamphetamine yield from the pseudoephedrine tablets would be approximately (2) grams of methamphetamine (from which Person A would receive half).

8. On March 16, 2015, law enforcement in Bristol, VA performed a vehicle stop on a car that Vernon Trivett was operating. The stop was based upon law enforcement observing that that the vehicle failed to stop at a stop sign, a brake light was not working, and the operator, Vernon Trivett, had a suspended license. A consent search of a passenger in the vehicle resulted in the seizure of digital scales, (4) baggies of suspected methamphetamine, and over $200 in United States Currency.

9. This affiant recently reviewed pseudoephedrine sales data provided by a number of retailers (as required under The Combat Methamphetamine Epidemic Act of 2005) and noted the following information (not all inclusive) regarding Vernon Trivett and David Osborn (Vernon Trivett's known co-habitant):

   - On 08-08-2014, Trivett purchased a (10) day supply of pseudoephedrine.
   - On 08-09-2014, Trivett purchased a (10) day supply of pseudoephedrine.
   - On 09-27-2014, Trivett purchased a (10) day supply of pseudoephedrine.
   - On 10-08-2014, Trivett purchased a (10) day supply of pseudoephedrine.
   - On 10-09-2014, Trivett purchased a (10) day supply of pseudoephedrine.

- On 10-30-2014, Trivett purchased a (10) day supply of pseudoephedrine.

- On 11-11-2014, Trivett purchased a (10) day supply of pseudoephedrine.

- On 12-08-2014, Trivett purchased a (12) day supply of pseudoephedrine.

- On 12-09-2014, Osborn purchased a (10) day supply of pseudoephedrine.

- On 12-16-2014, Trivett purchased a (10) day supply of pseudoephedrine.

- On 12-23-2014, Trivett purchased a (10) day supply of pseudoephedrine.

- On 01-09-2015, Trivett purchased a (10) day supply of pseudoephedrine.

- On 02-03-2015, Trivett purchased a (10) day supply of pseudoephedrine.

- On 02-08-2015, Osborn purchased a (10) day supply of pseudoephedrine.

- On 03-05-2015, Trivett purchased a (10) day supply of pseudoephedrine. Within (2) minutes of Trivett's purchase, Osborne purchased a (10) day supply of pseudoephedrine at the same pharmacy.

- On 03-22-2015, Trivett purchased a (6) day supply of pseudoephedrine.

- On 03-23-2015, Trivett purchased a (6) day supply of pseudoephedrine. [Per a retail store loss prevention employee/investigator, within (3) minutes of Trivett's purchase, a subject who accompanied Trivett to and from the retail store/pharmacy purchased a (12) day supply of pseudoephedrine.] Osborn purchased a (6) day supply of pseudoephedrine on this same date.

10. Pseudoephedrine and ammonium nitrate (instant cold packs) are key ingredients to the manufacturing of methamphetamine via the ammonium nitrate/lithium metal method. During the last several years, this affiant has routinely found and seized (via search warrants and consent searches) the aforementioned ingredients (and packaging of same) at methamphetamine manufacturing/precursor preparation sites. This affiant has encountered and seized said ingredients at such sites in various forms/stages (e.g. sludges/mixed with liquids) related to methamphetamine production and contained in a variety of glass and plastic containers days, weeks, and even months after the ingredients were purchased at pharmacies/retail stores.

11. This affiant is aware based on his training, experience, and conversations with other law enforcement officers that individuals who illegally manufacture and distribute methamphetamine and/or conspire to do so typically maintain methamphetamine manufacturing precursors/chemicals/equipment (as described in

paragraph #5 above) as well as distribution related paraphernalia (small, plastic bags, digital scales etc.) along with receipts / notes / records / telephone numbers (as they pertain to manufacturing/distribution/conspiracy to commit same), and other items as listed and explained on Attachment B (of the Application and Affidavit for Search Warrant to which this affidavit is attached) on their persons, inside their residences, garages, outbuildings/barns, campers, vehicles (or the vehicles they operate), and inside of vehicles registered to other persons when those vehicles are parked at the manufacturer's/distributor's/conspirator's residence/property.

12. Individuals who manufacture and distribute methamphetamine and/or conspire to do so routinely have persons who are methamphetamine users and/or additional co-conspirators (i.e. shoppers) present at their residences/properties. These users/co-conspirators often illegally possess methamphetamine and methamphetamine use paraphernalia and routinely possess notes, stored telephone numbers, and messages pertaining to their relationships with methamphetamine manufacturers / distributors / manufacturing co-conspirators. These users/co-conspirators are oftentimes in possession of other items as listed and explained on Attachment B (of the Application and Affidavit for Search Warrant to which this affidavit is attached) and possess these items on their persons and in their vehicles (or the vehicles they operate) which are oftentimes parked at the drug manufacturer's/distributor's/co-conspirator's residences/properties.

13. The clandestine manufacturing of methamphetamine is an extremely dangerous process that involves the use of toxic, flammable, explosive, and incompatible chemicals. Explosions, fires, and toxic gasses generally pose the greatest threats to law enforcement officers executing search warrants at methamphetamine manufacturing sites. It is not uncommon for methamphetamine manufacturers to panic when they become aware of a law enforcement presence at a methamphetamine manufacturing site. As a result of their panic, methamphetamine manufacturers have been known to attempt to dispose of evidence of their manufacturing by throwing/pouring chemicals into toilets, bathtubs, and sinks before law enforcement can gain entry and secure the premises. The pouring/mixing of the various chemicals during the attempted disposal creates an increased risk of explosion, fire, and toxic gas exposure due to the nature of the chemicals involved. This affiant believes that the above presents reasonable suspicion that knocking and announcing the presence of law enforcement officers at the time of the execution of this search warrant would prove dangerous to the law enforcement officers involved in the execution of the search warrant.

14. Vernon Trivett's and David Osborn's known residence is 651 Quarry Street, Apt. A4, Bristol, VA.

15. Based upon the facts set forth above, I believe that there is probable cause for the issuance of a search warrant for the premises known as 651 Quarry Street, Apt. A4, Bristol, VA (located within the Western District of Virginia) as there is probable cause to believe that there is evidence of a violation of 21 USC 846/841(a)(1) and/or 841(a)(1) at said premises.

_____  3-30-2015
Brian Snedeker, Special Agent (DEA)    Date

Subscribed and sworn to before me, this the 30th day of March, 2015 in Abingdon, Virginia.

_____
Pamela Meade Sargent
United States Magistrate Judge
Western District of Virginia